LEWIS·F. COLEMAN *v.* STATE OF MARYLAND

[No. 1211, September Term, 1976.]

*Decided September 14, 1977.*

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Richard R. Cooper,* with whom were *Burt, Cooper & Wadkovsky* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John T. Clark, III, State's Attorney for Queen Anne's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

As the species *homo sapiens* slowly evolved from the baser life forms, both a congregating into a family group and a division of labor therein became saliently characteristic. Man was the hunter and the warrior; Woman, the keeper of the hearth and the rocker of the cradle. Even latter-day

refinements were little more than variations upon this primordial theme. An increasingly organized society fashioned customs and then conventions and then laws to enforce the obligations implicit in this division. In the post-World War II enlightenment, however, such notions appear as remote as the Pleistocene. Organized society may still make distinctions based upon physical prowess, intellectual endowment, earning capacity, etc., but it may no longer arbitrarily assign roles and obligations automatically upon the basis of gender.

This enlightenment found expression in our own sovereignty on November 7, 1972, with the ratification of Article 46 of the Maryland Declaration of Rights:

> "Equality of rights under the law shall not be abridged or denied because of sex."

Against this bench mark, we are now squarely called upon to assess the constitutionality of Article 27, § 88 (a) [1], of the Annotated Code of Maryland, which, in pertinent part, provides:

> "Any person who shall without just cause desert or wilfully neglect to provide for the support and maintenance of his wife shall be deemed guilty of a misdemeanor, and upon conviction in any court of the State having criminal jurisdiction shall be punished by a fine not exceeding one hundred dollars, or imprisonment in the Maryland House of Correction, or in jail, for not more than three years, or both, in the discretion of the court."

Against the new standard, we find that this Maryland criminal provision, which may have served a purpose in its time, is now constitutionally wanting.

The appellant, Lewis F. Coleman, was convicted in the Circuit Court for Queen Anne's County by Judge K. Thomas

---

1. We consider here only the constitutionality of § 88 (a). The appellant, who has no children, was convicted only under Art. 27, § 88 (a). Our discussion in no way affects the constitutionality of Art. 27, § 88 (b), which imposes criminal sanctions upon "any parent" who deserts or wilfully neglects to provide for the support of his or her minor child.

Everngam, sitting without a jury, of both desertion and non-support of his wife in contravention of Article 27, § 88 (a). He was sentenced to serve a term of 30 days in the custody of the Sheriff of Queen Anne's County and was placed on probation for a period of three years. He raises before us, as he did at his trial, the constitutionality of a law which makes it a crime for a husband to fail to support his wife and a crime for a husband to desert his wife, but which does not create reciprocal crimes for the wife who deserts or fails to support her husband.

Factually, there is no question but that the appellant falls under the sanction of this law, if the law be viable. The appellant and his wife were married on October 25, 1970. They had no children. They lived together in a home they were purchasing in Queen Anne's County until November 22, 1975. On that day, the wife returned home from shopping to find the appellant with his truck backed up to the door of the house. He was loading a television set, a chest of drawers and all his personal effects. He told his wife that he was leaving and that he would not return until he was ready. He never returned. Above and beyond this desertion, there was clear evidence of non-support as well. The appellant made several mortgage payments on the home but also missed several payments. He made sporadic and erratic payments on the electric bill, taxes and insurance, his wife's car and for some clothing charged by her. He made no payments directly to his wife. At real issue here is not the state of the facts but only the constitutionality of the underlying law itself.

Initially, we have no difficulty in rejecting the State's contention that the appellant lacks standing. Under the questioned law, the appellant himself was indicted, tried and convicted. He is under sentence according to that law. This case bears no resemblance to the situations we were dealing with in *Minner v. Minner,* 19 Md. App. 154, 310 A. 2d 208, and *Colburn v. Colburn,* 20 Md. App. 346, 316 A. 2d 283. In both of those cases, husbands had been ordered to pay counsel fees and alimony. They challenged the constitutionality of those orders under the new sexual equal

rights amendment. It was held in both of those cases that they lacked standing to raise the constitutional question because they had not petitioned for reciprocal awards of alimony and counsel fees to themselves and could not, therefore, claim that they had been denied rights on the basis of their sex. The case of *Hughes v. State*, 14 Md. App. 497, 287 A. 2d 299, urged upon us by the State in this regard, is even more inapposite. The defendant there, convicted of a perverted practice with a minor, attempted to attack the constitutionality of the law against perverted practices on the grounds that the law, if applied to consenting adults and particularly if applied to husband and wife, would offend the Ninth and Fourteenth Amendments. We there held that since the defendant was not in such a class, he lacked the standing to question constitutionality, which standing might be possessed by members of that class. In the case at bar, the law applied directly to the appellant and to no one else. He squarely enjoys standing to question its constitutionality.

Section 88 (a) was enacted into law by Chapter 73 of the Laws of Maryland of 1896. It accurately reflected the zeitgeist of the 19th Century. A woman, deserted by her husband, would be a ward of the State, a charge or burden on the community at large. The criminal sanction was enacted to allocate the burden of support to the "lawful breadwinner" and not to the neighbors and fellow villagers. A man, on the other hand, deserted by his wife was not contemplated as one who would become a financial burden upon the community. The predicate for the law, however, rested upon a broader base than the mere fear that the wife, unsupported by her husband, would become a public charge. The duty of the husband to support the wife, above and beyond the question of her financial need, was warp and woof of the prevailing ethos of the times. In discussing the background of § 88 (a), *Ewell v. State*, 207 Md. 288, 292, 114 A. 2d 66, spoke of the general attitude of the common law:

> "At common law ... [t]he husband had an obligation of support, which was to furnish necessaries to the wife. If he did not, her remedy

was to purchase the necessaries on his credit. The meaning of the term necessaries was relative, elastic and dependent upon circumstances, that is, the means and station in life of the couple. The liability of a husband was not limited merely to articles necessary to sustain life or to preserve decency but extended to things which would be desirable and suitable in view of the rank, fortune, earning capacity of the husband and the mode of living of the couple. The liability of the husband to furnish necessaries did not depend upon whether the wife had means of her own and was able to pay for them herself, at least in Maryland."

Judge Offutt had earlier said for the Court of Appeals in *McFerren v. Goldsmith-Stern Co.*, 137 Md. 573, 577-578, 113 A. 107:

"If then the husband's duty to supply his wife with necessities depends upon the marital relation and the obligations incident thereto, it cannot be said to depend upon, nor be affected by her ability to procure such necessities from her separate estate, and such seems to be the general view. . . . 'The right of a wife to support from her husband and his duty to support her do not depend upon the inadequacy of her means, but upon the marriage relation. Her implied authority to pledge his credit springs from his obligation, as husband, to provide for her, and not from the fact that otherwise she will be destitute.' . . . And in our opinion the principles so stated are not only established by our decisions, but are entirely consonant with reason and the best considered authority elsewhere."

See also *Wald v. Wald*, 161 Md. 493, 159 A. 97.

This was unquestionably the traditional view. Over the more than eight decades following the promulgation of § 88 (a), however, that view has been subjected to a series of violent cultural shocks. The Equal Rights Amendment of 1972 more accurately reflects the ethos or zeitgeist of this time.

In *Rand v. Rand,* 280 Md. 508, 374 A. 2d 900, Chief Judge Murphy for the Court of Appeals assessed the impact of the Equal Rights Amendment upon the traditional viewpoint toward sex-based classifications, at 374 A. 2d 904-905:

"Like the Supreme Court of Washington ... we believe that the 'broad, sweeping, mandatory language' of the amendment is cogent evidence that the people of Maryland are fully committed to equal rights for men and women. The adoption of the E.R.A. in this state was intended to, and did, drastically alter traditional views of the validity of sex-based classifications."

In *Rand v. Rand,* the Court of Appeals quotes with approval the decision of the Supreme Court of Pennsylvania in *Henderson v. Henderson,* 458 Pa. 97, 101, 327 A. 2d 60, 62 (1974). In interpreting an Equal Rights Amendment virtually verbatim with Maryland's, Pennsylvania ruled it unconstitutional to require a husband to post security for costs in a pending divorce under a statute burdening men only. The Supreme Court of Pennsylvania there said:

"The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman."

Measured against the clear command of the Equal Rights Amendment, there is no question that § 88 (a) cannot pass muster. To establish that it is a crime for a husband to desert his wife but no crime for a wife to desert her husband and to establish that it is a crime for a husband to fail to support his wife but no crime for a wife to fail to support her husband is to establish a distinction solely upon the basis of

sex. In *Rand v. Rand,* Chief Judge Murphy pointed out that such distinctions are now absolutely forbidden, at 374 A. 2d 902-903:

> "To ascertain the mandate of the constitutional amendment, we look first to the 'natural and ordinary signification' of its language. *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 358 A. 2d 241 (1976). If that language is clear and unambiguous, we need not look elsewhere. *Harden v. Mass Transit Adm.,* 277 Md. 399, 354 A. 2d 817 (1976); *Md.-Nat'l Cap. P. & P. v. Rockville,* 272 Md. 550, 325 A. 2d 748 (1974). The words of the E.R.A. are clear and unambiguous; they say without equivocation that 'Equality of rights under the law shall not be abridged or denied because of sex.' This language mandating equality of rights can only mean that sex is not a factor. See Brown, Emerson, Falk, and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871 (1971)."

In the *Rand v. Rand* case itself, the Court of Appeals held that both the mother and the father share financial responsibility for the support of the children of the marriage.

Indeed, the purpose that once animated § 88 (a) is no longer the public policy of this state. In Article 16, § 24, cataloging the causes for a divorce a vinculo, and § 25, listing the causes for a divorce a mensa et thoro, no distinction is made between whether the abandoning or deserting party is the male or female partner to the marriage. By a 1975 amendment, Article 16, § 3, was made to read:

> "In cases where a divorce is decreed, alimony may be awarded to either spouse."

The amendment added the words "to either spouse" to the section. In 1976, § 5 was amended, by deleting the word

"wife's" and substituting the word "spouse's" so as to make subsection (a) read:

> "In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court may not award alimony, alimony pendente lite, or counsel fees unless it appears from the evidence that the spouse's income is insufficient to care for his or her needs."

Because it offends Article 46 of the Maryland Declaration of Rights, Article 27, § 88 (a), is unconstitutional. The convictions of the appellant under that unconstitutional law must, therefore, be reversed.[2]

*Judgments reversed; costs to be paid by County Commissioners for Queen Anne's County.*

---

**2.** In view of our disposition of this case on the basis of the Maryland Declaration of Rights, it is unnecessary for us to consider whether Article 27, § 88 (a), also offends the Equal Protection Clause of the Fourteenth Amendment. See, however, *Craig v. Boren,* 429 U. S. 190, 97 S. Ct. 451, 50 L.Ed.2d 397 (1976).