Francis A. CASH, Appellee,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education & Welfare, Appellant,

J. B. Hutton, Jr., Amicus Curiae.

No. 79–1279.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1980.

Decided May 19, 1980.

A. George Lowe, Dept. of Health, Education & Welfare, Baltimore, Md. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Paul R. Thomson, Jr., U. S. Atty., Morgan E. Scott, Jr., Asst. U. S. Atty., Roanoke, Va., Randolph W. Gaines, Chief of Litigation, Dept. of Health, Education & Welfare, Baltimore, Md., Edith R. Perez, Third Year Law Student, on brief), for appellant.

Francis A. Cash, pro se.

Before HAYNSWORTH, Chief Judge, MURNAGHAN, Circuit Judge, and HAWKINS *, District Judge.

HAYNSWORTH, Chief Judge:

The central question presented on this appeal is whether the rule of *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) should be applied to a case which was pending before the Secretary of HEW at the time *Goldfarb* was decided. The Secretary contends that *Goldfarb* should be applied prospectively only. Furthermore, the Secretary argues that should *Goldfarb* be applied to this case, any award of past-due benefits would violate the sovereign immunity of the United States. The district court rejected both of these contentions and awarded past-due benefits to the claimant. We affirm.

I.

Francis Cash applied for widower's insurance benefits on October 21, 1976. Initially

* Honorable Falcon B. Hawkins, United States District Judge for the District of South Carolina, sitting by designation.

his claim was denied since his own social security retirement account would provide him with greater monthly benefits. Cash immediately sought limited review of that denial for the period between December 1975 and July 1976, months during which he had not been eligible for retirement benefits. This claim was denied on the basis that Cash had failed to establish dependency upon his deceased spouse as required by 42 U.S.C.A. § 402(f)(1)(D)(i) (1974). No such showing of dependency was required for similarly situated widows. *See id.* § 402(e). Cash lodged an administrative appeal solely on the dependency question.

During the pendency of Cash's claim before the Social Security Administration, the Supreme Court struck down the dependency requirement for widowers as violative of the equal protection concept embodied in the Fifth Amendment. *Califano v. Goldfarb, supra.* Nevertheless, the Administrative Law Judge who considered Cash's appeal, refused to apply *Goldfarb* since the Supreme Court had not specifically ruled that *Goldfarb* was to be applied retroactively. The Secretary adopted the ALJ's conclusion that Cash was not entitled to benefits. Cash brought suit in district court, 42 U.S.C.A. § 405(g), and the district court, applying *Goldfarb*, reversed the Secretary and awarded benefits for the period in question. This appeal followed.

## II.

■ A general rule in Anglo-American jurisprudence is that judicial decisions are to be applied retroactively. Generally speaking, this is necessarily so for the parties before the court. It is implicitly so for all other potential litigants. The concept stems from the Blackstonian view, that judges do not make law; they find law. Judicial declaration of law is merely a statement of what the law has always been. "For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it was not law." 1 Blackstone, Commentaries on the Law of England 70 (1765). A corollary of this proposition is the rule that a court will apply judicial case law as that law exists at the time of decision. These rules are in contrast with the precept that legislation operates prospectively only. Thus it has been argued that to the extent a court applies nonretroactivity to a decision or legal interpretation, that court has undertaken a legislative function. *See, e. g.,* Mishkin, *The Supreme Court, 1964 Term, Forward: The High Court, The Great Writ, and the Due Process of Time and Law,* 79 Harv.L.Rev. 56, 58–72 (1965).

■ However, even these rudiments of common law must be applied with some flexibility.[1] The lay perception is that courts do change law. Moreover, cases do arise in which equitable considerations outweigh subservience to traditional notions of the judicial function. When parties have substantially relied upon prior legal interpretations, it may be manifestly unjust to apply the current interpretation retroactively even if that interpretation does represent the "correct" statement of law. This was the equitable consideration behind the "all deliberate speed" mandate of *Brown v. Board of Education,* 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). Under a strict Blackstonian view, the order to deseg-

---

1. The Constitution neither adopted nor rejected the Blackstonian view. The seminal case is *Great Northern Ry. v. Sunburst Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 60 (1932). In *Sunburst,* the question was whether, consistent with the Constitution, a state court could overrule precedent and yet not apply the new rule to the case at bar. The Supreme Court explained, "This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the Constitution of the United States is infringed by the refusal. We think the federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Id.* at 364, 53 S.Ct. at 148. The *Sunburst* doctrine and its numerous variations have been applied now on both the state and federal levels. *See generally* R. Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility,* 28 Hast.L.J. 533 (1977). As discussed *infra,* even newly formulated constitutional doctrine may be adopted for prospective operation only.

regate would have taken immediate effect notwithstanding the states' reliance on the erroneous rule enunciated in *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896). *See* J.A.C. Grant, *The Legal Effect of a Ruling that a Statute is Unconstitutional*, 1978 Det.C.L.Rev. 201, 238. Confronted with such a situation, the court does not legislate. It merely molds a remedy to avoid a clearly unjust or untenable result. The court dons the hat of equity. With respect to the general rule, this court has previously explained:

> It has in it much literal truth in the context of all but a few exceptional cases when the courts are about their usual business of settling controversies in terms of the law as it is declared at the moment of decision. It is not a shackle, however. In the exceptional case it does not compel a court confronted with earlier misreadings of a statute to choose between perpetuation of the error and casting inequitable burdens upon litigants who had acted in justifiable reliance upon the earlier reading.

*Lester v. McFaddon*, 415 F.2d 1101, 1107 (4th Cir. 1969) (footnotes omitted). Of course, the party seeking to have a court adopt a rule of nonretroactivity in a particular case, does have the burden of presenting the necessary equitable predicate. The Secretary bears that burden.

### III.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court presented an analytical framework to be used in determining whether a decision should not be afforded the normal retroactive application:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . .
> Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–7, 92 S.Ct. at 355 (citations omitted). The application of these factors is not accomplished through a discrete reference to each separate factor, but by an analysis of how they interact with one another. For example, the final factor of "inequitable result" is closely tied to the initial reliance factor. Absent some surprise engendered by a current judicial interpretation, a litigant cannot be heard to demand nonretroactivity on the basis of inequity. Similarly, a finding under the second factor that retroactive application would not advance the policy of a recently discovered law will not in itself preclude retroactivity, unless application of the rule would produce an inequitable result. Naturally, our analysis must proceed one step at a time. However, the final determination involves pulling together the three factors for a careful balancing. Indeed, even a step by step analysis suggests the close interrelationship of the factors.

The cases in which the Supreme Court has adopted nonretroactivity have all included a reliance factor. Some of these cases have involved unexpected interpretations of procedural law, the retroactive application of which would have clearly prejudiced an unwary litigant by erecting, directly or indirectly, an absolute bar to his claim. *Chevron Oil Co. v. Huson, supra; England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *see also Lester v. McFaddon, supra.* Other cases have involved substantive interpretations of law which would have altered significantly pre-existing pat-

terns of behavior, and concomitant vested rights, which had been premised upon reasonable interpretations of legal precedent. *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973); *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). Even in the criminal procedure area, adoption of nonretroactivity is premised upon the state's or the locality's good faith belief that procedures now deemed unconstitutional at the time of enforcement had met constitutional norms. *See Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

The Secretary argues that *Califano v. Goldfarb* "was not clearly foreshadowed" by legal precedent, and that the Secretary could justifiably presume the legality of the dependency requirement in § 402(f). In presenting this argument, the Secretary emphasizes that the law of sexual discrimination is in a state of evolution and that the *Goldfarb* decision, a 4–1–4 plurality, is a reflection of uncertainty caused by developing concepts of equal protection. But our analysis does not center upon the Court's vote in a particular case, nor upon the general character of the law. The question to be addressed is whether past precedents had paved the way for the result in *Goldfarb* or whether *Goldfarb* was a departure from an expected result.

In *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), the Supreme Court held that a statute which granted benefits based upon the presumed dependency of the spouse of a male Air Force officer, but which required the spouse of a female Air Force officer to meet a one-half support test as a prerequisite to eligibility for the same benefits, was violative of the due process clause of the Fifth Amendment. The statute struck down in *Goldfarb* required the widower to meet a one-half support test in order to qualify for benefits. Thus, in both *Frontiero* and *Gold-*

*farb*, in order to qualify for a particular benefit package, the spouse of a female wage earner was required to prove something more than required of the spouse of a male wage earner. The result in *Goldfarb* was fairly dictated by *Frontiero*. Similarly, in *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), the Court struck down a gender based distinction in the Social Security program which granted benefits to both a widow and her minor children, but not to a similarly situated widower. The Court held that this statutory scheme discriminated against female wage earners by providing less protection for their survivors than is provided for the survivors of male wage earners. Although not as closely analogous to *Goldfarb* as is *Frontiero*, *Wiesenfeld* also points to the *Goldfarb* result. Certainly § 402(f)(1)(D)(i) provided less protection for the survivor of a female wage earner than § 402(e) provided for the survivor of a male wage earner. Indeed, considering *Frontiero* and *Wiesenfeld*, the most surprising thing about *Goldfarb* is the closeness of the decision.

The Secretary cannot have been surprised by the result in *Goldfarb*. Since the opinions in *Frontiero* and *Wiesenfeld* were not themselves unanimous, the most the Secretary could have hoped for was a halt in a very clear trend. None of the nonretroactivity cases have turned on so tenuous a proposition. Instead those cases have either involved a complete reversal of prior law, *Chevron Oil Co., supra,* or a pronouncement upon a case of first impression, *Lemon v. Kurtzman, supra.* For example, in *Lemon* the question before the Court was the validity of a newly improvised plan which would permit a state to partially subsidize sectarian schools. The *Lemon* Court held that the plan did violate the establishment clause, but that the schools' initial reliance upon the plan was justifiable in that the violations inherent in the plan posed constitutional questions of first impression. A similar result was achieved in cases involving due process violations in municipal bond elections. *City of Phoenix v. Kolodziejski, supra; Cipriano v. City of*

*Houma, supra.* The essence of these decisions is that reasonable parties will not be held to foreknowledge of the result in a case of first impression. *Goldfarb* clearly did not involve the reversal of an earlier decision, and, in light of *Frontiero* and *Wiesenfeld*, the issue presented in *Goldfarb* was not one of first impression. The Secretary has not met even this threshold requirement of the reliance factor.

The next factor to be considered is whether retroactive application of the new rule "will further or retard its operation." As indicated previously, this factor is not dispositive unless there is a showing of inequity, and, in light of the presumption of retroactivity, a neutral response to this query merely augurs against nonretroactivity.

The question before the Court in *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) was whether the exclusionary rule held applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be applied to the cases which had become final prior to the *Mapp* decision.[2] The Court reasoned that since the purpose of the exclusionary rule was to deter unlawful police conduct no benefit could be derived by retroactive application of *Mapp.* "We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to *Mapp* has already occurred and will not be corrected by releasing the prisoners involved." 381 U.S. at 637, 85 S.Ct. at 1742. This, coupled with the Court's recognition that the states had relied upon earlier Fourth Amendment jurisprudence in scores of trials without resort to the exclusionary rule, led the Court to conclude that retroactive application of *Mapp* would be inappropriate.

The Court also examined this factor in *Lemon v. Kurtzman, supra.* There the question was whether the state should be allowed to pay the sectarian schools funds for expenses incurred by the schools prior to the Supreme Court's invalidation of the

funding plan. The Court noted that since the primary illegality of the plan was not the funding aspect but the state's supervisory role over the sectarian schools in implementing the funding, the rule disallowing the plan would not be impaired by paying these funds. The state's supervisory involvement had come to an end. The payment of funds upon which the schools had relied was an equitable remedy which neither circumvented nor violated the new constitutional rule. A contrary result was reached in *New York v. Cathedral Academy,* 434 U.S. 125, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977). There, the payments to the sectarian schools were themselves a violation of the establishment clause. To allow nonretroactivity would have been to sanction a constitutional violation by allowing the schools to collect pre-decision funds. Such an application of nonretroactivity would have "retarded" implementation of the constitutional rule.

The rule at issue here is the equal protection of female wage earners. Unlike the situation in *Linkletter,* where the rule was designed to implement a policy, here the rule and the policy are one. Retroactivity would simply insure that money paid into Social Security by a female wage earner would be available to her surviving spouse on the same terms as money earned and paid by a male wage earner is available to his spouse. The time of protection is expanded. In fact, like the situation presented in *Cathedral Academy,* nonretroactivity would retard application of the rule by permitting the Secretary to continue to violate constitutional rights mandated by the due process clause of the Fifth Amendment.

Finally, the court must consider the equities. Would the administration of Social Security benefits be severely prejudiced by applying *Goldfarb* to cases which were pending at the time *Goldfarb* was decided? In the absence of justifiable reliance on the validity of § 402(f)(1)(D)(i), the Secretary cannot be heard to complain of a detriment

---

**2.** The writ of habeas corpus adds a dimension to retroactivity questions in the criminal area which is not present in civil litigation. With

the aid of that writ, the doctrine of finality may be circumvented.

in this regard. There has been no showing that other beneficiaries would suffer a loss of benefits as a result of a retroactive application of *Goldfarb.* We only know that more benefits will be payable by the Secretary. A financial impact alone is an insufficient basis to mandate nonretroactivity. Prospective application of *Goldfarb* will have a financial impact. When nonretroactivity has been applied there was a showing of substantial prejudice based on justifiable reliance. There has been no such showing here.[3]

■ We hold that the Secretary has failed to establish the equitable predicate necessary to avoid the general rule that judicial decisions are to have retroactive effect and that a court is to apply the "terms of the law as it is declared at the moment of decision." *Lester v. McFaddon, supra,* 415 F.2d at 1107. *Goldfarb* was the controlling law on the date the district court decided this case. The district court properly applied it.

## IV.

■ The Secretary next contends that an award of past-due benefits would violate the sovereign immunity of the United States.

Primary reliance is placed upon *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan,* two civil service employees were seeking reclassification to a higher grade as well as compensation for back pay. The Supreme Court held that since the employees could point to no law which granted them a substantive right to back pay, they would not be entitled to proceed against the sovereign on that claim. The Court noted that while the Tucker Act, 28 U.S.C.A. § 1491, does provide a jurisdic-

tional right to file suit for compensation, a waiver of sovereign immunity must be based upon the grant of a substantive right to the claimed compensation. There simply was no grant.[4]

The question before this court is whether claimant was entitled to widower's benefits under 42 U.S.C.A. § 402(f) from December 1975 through July 1976. Under § 402(f) Congress has granted widowers a substantive right to Social Security benefits. In light of *Goldfarb* and the preceding discussion, it is clear that Cash was entitled to such benefits during that period. Our decision will not require an assessment of damages against the United States. We merely follow the mandate of § 405(g) which grants the district court the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Reversal of the Secretary's determination not to grant benefits, naturally requires their disbursement. *Accord, Wright v. Califano,* 603 F.2d 666, 671 (7th Cir. 1979); *see also id.* at 672 n. 16. But the Congressional plan did not give the Secretary the unbridled power to permanently deprive claimants of benefits which were due prior to a final judicial determination of the claim. Section 405(g) makes that clear.

Cash's claim for benefits is based upon a substantive right granted by Congress, and that right is enforceable by the district court's express power to reverse the Secretary. As the court stated in *Wright v. Califano, supra,* 603 F.2d at 671–72: "The doctrine of sovereign immunity does not require more."

*AFFIRMED.*

---

3. In *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), a funding aspect of a retirement program was held to violate Title VII. The defendant was given the benefit of nonretroactivity since the question presented was one of first impression and since defendant specifically showed a substantial detrimental impact upon the actuarial composition of its retirement plan. The Secretary has made no such showing here. Moreover, Social Security certainly has more flexi-

bility than would a limited contribution retirement plan. Finally, in *Manhart,* the statute at issue specifically permitted a court to consider a nonretroactive remedy.

4. *See also Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which comes to a similar conclusion in the Eleventh Amendment context. The key point is whether there has been a waiver of the immunity.