Robert Allen LLOYD

v.

STATE DIVISION OF PAROLE AND PROBATION.

Civ. No. W–75–425.

United States District Court, D. Maryland.

Feb. 28, 1983.

**1298**

Cynthia Ann Ross, Venable, Baetjer & Howard, Baltimore, Md., for petitioner.

Stephen H. Sachs, Atty. Gen. of Md., Stephen Rosenbaum, Asst. Atty. Gen., Baltimore, Md., for respondent.

WATKINS, Senior District Judge.

Robert Allen Lloyd seeks habeas corpus relief from a 1967 conviction under Md.Ann. Code art. 27, § 88(a) (1951) for criminal nonsupport. That statute provided in relevant part:

> Any person who shall without just cause desert or wilfully neglect to provide for the support and maintenance of *his wife* shall be deemed guilty of a misdemeanor, and upon conviction in any court of the State having criminal jurisdiction shall be punished by a fine not exceeding one hundred dollars, or imprisonment in the Maryland House of Correction, or in jail, for not more than three years, or both, in the discretion of the court.

(Emphasis added.) This provision was declared to be in violation of Article 46 of the Maryland Declaration of Rights, the State's own equal rights amendment, in *Coleman v. Maryland,* 37 Md.App. 322, 377 A.2d 553 (Md.Ct.Spec.App.1977). Since that time, the State of Maryland has enacted a gender-neutral nonsupport statute. *See* Md. Ann.Code art. 27 § 88(a) (1982).

Petitioner initially contended that this statute violates both Article 46 of the Maryland Declaration of Rights[1] and the equal protection clause of the fourteenth amendment.[2] In a prior memorandum opinion, the Court dismissed the former claim as being beyond the Court's jurisdiction in a habeas case. Civil No. W–75–425 (July 10, 1980). Petitioner's federal equal protection claim remains.

Respondent concedes that the statute as it stood in 1967 violates the equal protection

---

1. Article 46 of the Maryland Declaration of Rights provides: "Equality of rights under the law shall not be abridged or denied because of sex." Md. Const. art. 46.

2. The equal protection clause of the fourteenth amendment provides: "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws". U.S. Const. amend. XIV, § 1.

clause as it is now construed. Instead, respondent asserts that the construction given the equal protection clause in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), ought not be applied retroactively to upset petitioner's conviction. In *Reed,* the Supreme Court held that a statute which accorded different treatment to similarly situated males and females on the basis of criteria wholly unrelated to the statute's objective could not withstand constitutional attack on equal protection grounds.[3]

■ As a general rule, it is the function of the judiciary to apply case law "as that law exists at the time of decision." *Cash v. Califano,* 621 F.2d 626, 628 (4 Cir.1980). Equitable considerations may, however, require a court to adopt a rule of nonretroactivity in a particular case. *Id.* at 629. The pivotal issue is therefore whether the facts and circumstances underlying Lloyd's habeas corpus petition justify adopting such a rule in the instant proceeding. For if the Court finds retroactive application of *Reed* warranted here, then it is undisputed petitioner is entitled to the relief he is seeking.[4]

## I

On December 4, 1967 petitioner was tried before a jury in Prince George's County Circuit Court, and found guilty of nonsupport in violation of Md.Ann.Code art. 27, § 88 (1951). Lloyd was then sentenced to the jurisdiction of the Maryland Department of Corrections for an indeterminate period not exceeding six months, and ordered to pay $50.00 per week to his wife for the support and maintenance of herself and two of her children for a period of three years. Petitioner appealed his conviction to the Maryland Court of Special Appeals which dismissed the case for lack of jurisdiction, and simultaneously denied certiorari. The Maryland Court of Appeals also denied certiorari.

Thereafter, petitioner filed for relief under the Maryland Uniform Post Conviction Act, or in the alternative, a petition for a writ of habeas corpus. The Circuit Court for Prince George's County denied both petitions on June 4, 1970 without a hearing. The Maryland Court of Special Appeals remanded the case to afford petitioner a hearing which was held on March 23, 1973. At that hearing Circuit Judge Taylor found that petitioner was in arrears in his support payments in the amount of $6,019.32. Judge Taylor indefinitely suspended arrearage payments upon the condition that petitioner make weekly support payments of $35.02 through the Maryland Department of Parole and Probation. Petitioner's subsequent motion for reconsideration was denied and Judge Taylor's ruling was affirmed by the Court of Special Appeals on April 16, 1974.

In addition to the state court proceedings, petitioner has filed three prior habeas corpus petitions in the United States District Court for the District of Maryland. In Civil No. 19022 (December 29, 1967), Judge Northrop dismissed Lloyd's petition for failure to exhaust state remedies. In Civil Nos. W–70–1369 (February 5, 1970) and W–73–722 (July 26, 1973), this Court denied

---

3. Although *Reed* did not explicitly purport to raise the level of equal protection scrutiny to which state and federal laws are subject, the cases that have followed in *Reed's* wake have made it quite clear that such was its impact. To stave off a challenge based upon the equal protection clause today, "classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976).

4. In resolving this dispute the Court takes cognizance of the fact that the retroactivity of the expansive interpretation of the equal protection clause initiated by *Reed* is a controversial mat-

ter. *See, e.g., Radcliff v. Anderson,* 509 F.2d 1093 (10 Cir.1974), *cert. denied,* 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975) (expansive interpretation effectively applied retroactively). *But see United States v. Housewright,* 528 F.2d 259 (7 Cir.1975) (expansive interpretation effectively applied prospectively only). The Court today makes no pronouncement as to the propriety of applying the *Reed* precedent retroactively in each and every case. Rather, its opinion is necessarily limited to the facts and circumstances of the case presently before it. *See Woodall v. Pettibone,* 465 F.2d 49, 50 (4 Cir.1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973).

Lloyd's petitions for similar reasons. Lloyd did not, however, assert an equal protection claim in any of these petitions.

## II

■ Several threshold requirements must be met before a federal court may proceed to address the substantive merits of a habeas corpus petition. First and foremost, the petitioner's claim must be cognizable under 28 U.S.C. § 2254. Having asserted that his conviction is based upon a law which contravenes the equal protection clause of the fourteenth amendment, petitioner clearly has met this requirement.

■ Second, petitioner must be "in custody" in violation of the laws, treaties or Constitution of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). While it is clear that the custody requirement is not met when an expired state sentence is challenged, *Harris v. Ingram*, 683 F.2d 97 (4 Cir.1982), persons on probation,[5] and on parole[6] are considered "in custody" within the meaning of 28 U.S.C. § 2254(a). Having filed the instant petition while on probation, Lloyd has therefore satisfied this requirement as well. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968).

A third threshold requirement is that petitioner exhaust all available state remedies prior to seeking relief in federal court. 28 U.S.C. § 2254(b). Respondent concedes that petitioner has exhausted state remedies with regard to his equal protection claim. Thus, the Court need not dwell on this issue other than to note that respondent's concession is well documented by numerous state court proceedings instituted by petitioner.

■ Finally, a habeas corpus petition may fail if it is either successive or substantially delayed. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). In this regard, respondent has argued that Lloyd's failure to present the equal protection claim in any of his prior

federal petitions precludes the Court from considering it now. The Court previously has rejected this argument, however, finding that petitioner did not know at the time of his earlier petition that the facts and circumstances underlying the instant case might establish a basis for federal habeas corpus relief. Civil No. W–75–425 (September 26, 1980).

## III

Having determined that petitioner has satisfied all of the threshold requirements for habeas corpus relief under 28 U.S.C. § 2254, the Court may now squarely confront the retroactivity issue. In *Cash v. Califano, supra* the Fourth Circuit expressed a strong preference for applying judicial decisions retroactively rather than prospectively only. This view is based upon the Blackstonian theory of the judge as discoverer of the law. That is, "[j]udicial declaration of law is merely a statement of what the law has always been." *Id.* at 628. Thus, when a court departs from prior precedent, that departure does not constitute new law, but rather a more correct application of what is, and what from time immemorial has been, the true law.

■ Despite this prepossession in favor of retroactivity, a court may decline to give a judicial decision retroactive effect as a matter of equity. It is clear, however, that the party urging nonretroactivity has "the burden of presenting the necessary equitable predicate." *Id.* at 629. Consequently, the onus falls upon respondent to convince the Court that the interests of equity would best be served by adopting a rule of nonretroactivity in the case at bar.

The Supreme Court has established that whether or not a given decision should be applied retroactively depends upon the following criteria:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past prece-

---

5. *Benson v. California*, 328 F.2d 159 (9 Cir. 1964).

6. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

dent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed .... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted). Applying these factors to a particular case requires "careful balancing" of all three factors rather than "discrete reference to each separate factor." *Cash v. Califano, supra* at 629. A very important concern in this regard is the adverse impact, if any, retroactive application would have either upon the party urging nonretroactivity or the rule of law itself. Additionally, the Supreme Court has emphasized that the purpose and effect of a statute merit serious attention where a criminal conviction is challenged. *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980).

Respondent's argument begins with the frank acknowledgment that the rule of law adopted in *Reed v. Reed, supra,* if applied retroactively, invalidates the statute under which petitioner was convicted. At issue in *Reed* was the constitutionality of an Idaho statute which provided that as between persons equally qualified to administer estates, males were entitled to a preference over females. The Supreme Court struck the provision finding that the arbitrariness of the gender-based distinction violated the equal protection clause of the fourteenth amendment.

Respondent does not dispute that the statute under attack by petitioner, like the Idaho statute, contains a gender-based clas-

sification which is no longer constitutionally acceptable. Rather, respondent contends (1) that the statute in question could survive constitutional scrutiny at the time petitioner was convicted; (2) that the State justifiably relied on existing Supreme Court precedent in prosecuting petitioner under that statute; (3) that the State could not anticipate the construction given to the equal protection clause by the Supreme Court in *Reed* inasmuch as petitioner was tried and convicted under the challenged statute four years prior to the Supreme Court's ruling in that case; (4) that even if the statute were gender-neutral with regard to the support obligations of the spouses, petitioner still would be subject to penalty; and (5) that the rule of law enunciated in *Reed* will not be furthered by retroactive application in the instant case.

Respondent correctly asserts that Md. Ann.Code art. 27, § 88(a) (1951) did not violate the equal protection clause as construed before the Supreme Court's ruling in *Reed v. Reed.* Prior to that landmark decision, a gender-based classification, like any other statutory classification, survived constitutional attack if a rational basis for the distinction could be identified. The former equal protection analysis was concisely stated by Chief Justice Warren in *McGowan v. Maryland:*

Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.

366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (citations omitted). The Maryland Court of Special Appeals identi-

fied the rational basis behind the gender-based distinction contained in the questioned statute in *Coleman v. Maryland:*

> Section 88(a) was enacted into law by Chapter 73 of the Laws of Maryland of 1896. It accurately reflected the zeitgeist of the 19th Century. A woman, deserted by her husband, would be a ward of the State, a charge or burden on the community at large. The criminal sanction was enacted to allocate the burden of support to the "lawful breadwinner" and not to the neighbors and fellow villagers. A man, on the other hand, deserted by his wife was not contemplated as one who would become a financial burden upon the community. The predicate for the law, however, rested upon a broader base than the mere fear that the wife, unsupported by her husband, would become a public charge. The duty of the husband to support the wife, above and beyond the question of her financial need, was warp and woof of the prevailing ethos of the times.

37 Md.App. at 325, 377 A.2d 553.

■ Respondent's good faith reliance on existing precedent alone does not, however, mandate nonretroactivity. Any time the retroactivity of a judicial decision is at issue, the proponent of nonretroactivity may well have relied in good faith on existing precedent. The important question is whether and to what degree that proponent *detrimentally* relied upon the existing precedent. *E.g., Chevron Oil v. Huson, supra; England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Respondent does not claim that retroactive application of *Reed* to upset petitioner's conviction would have a deleterious impact on its administration of justice. Furthermore, such harm can scarcely be imagined in light of *Coleman v. Maryland, supra* wherein the Maryland Court of Special Appeals declared the challenged statute in violation of the state constitution. Inasmuch as the *Coleman* decision was rendered more than five years ago, it is evident that no person has been prosecuted under the constitutionality defective statute for at least that length of time. Moreover, the nature of the penalty which could be imposed upon a person convicted thereunder makes it likely that few, if any, individuals remain in state custody pursuant to such a conviction. Finally, the State may if it wishes retry under the revised Section 88(a) any person who, like Lloyd, seeks to have his conviction set aside on equal protection grounds. Clearly then, the reliance factor does not serve as a basis for justifying nonretroactivity in the context of the instant case.

■ Furthermore, the Court finds respondent's asserted inability to read the handwriting on the wall unpersuasive. Petitioner correctly observes that by 1967 the traditional concept of the male spouse as "breadwinner" had been eroded substantially. Female spouses by that time already constituted a significant portion of the nation's work force. Title VII of the Civil Rights Act of 1964 and the Equal Pay Act were but two manifestations of the evolving notion that gender-based distinctions were quickly becoming intolerable as a matter of law. While *Reed* instituted a new standard of review for classifications based on gender, it certainly did not, even in 1967, establish radically new concepts. Consequently, the asserted inadequate foreshadowing does not warrant nonretroactivity of the equal protection standard created in *Reed.*

■ Respondent's contention that petitioner would still be subject to penalty under a gender-neutral statute is not compelling. Petitioner was convicted under a statute with a built-in presumption that it is the duty of the male spouse to provide support for his wife regardless of her financial position or the circumstances precipitating the spouses' separation. Had the statute been gender-neutral, it is quite possible petitioner could have established that his estranged wife was fully capable of supporting herself, or that monies she received from petitioner were sufficient to meet petitioner's support obligation. It is therefore evident that the constitutionally impermissible gender-based classification under *Reed*

contained in Section 88(a) may very well have tainted petitioner's conviction.

▪ Respondent's final thrust, that the rule of law enunciated in *Reed* will not be furthered by retroactive application in the instant case, is utterly without merit. Cases decided prior to *Reed* made it abundantly clear that the rational basis standard of judicial review did not adequately safeguard the equal protection interests of similarly situated males and females. Under that standard, laws designed to perpetuate antiquated societal notions regarding the respective roles and obligations of men and women were fully capable of repelling constitutional attack. *See, e.g., Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) (statute that accords females only waivable exemption from jury duty does not violate equal protection clause); *Goesaert v. Cleary,* 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948) (statute that prohibits females from bartending not violative of equal protection clause); *Miskunas v. Union Carbide Corp.,* 399 F.2d 847, (7 Cir.1968), *cert. denied,* 393 U.S. 1066, 89 S.Ct. 718, 21 L.Ed.2d 709 (1969) (statute which permits cause of action for loss of consortium for male spouse only comports with equal protection clause).

In the cases that have followed the path cleared by *Reed,* statutes "announcing the State's preference for an allocation of family responsibilities under which the wife plays a dependent role, and . . . seeking for their objective the reinforcement of that model among the State's citizens," *Orr v. Orr,* 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979), repeatedly have been assailed on equal protection grounds. In *Orr,* for example, the Supreme Court struck a statutory scheme which provided that husbands but not wives may be required to pay alimony, finding that the law created an arbitrary gender-based classification. *See also Kirchberg v. Feenstra,* 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) (statute giving husband unilateral right to dispose of property jointly owned with wife violates equal protection clause); *Califano*

*v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (statutory gender-based distinction between widows and widowers in which Social Security Act survivor's benefits payable to widower of covered female wage earner only if widower receiving half his support from deceased wife while comparable benefits based upon earnings of deceased husband payable to his widow regardless of dependency violates equal protection clause). Both parties agree that the statute challenged here suffers from a similar deficiency.

The same principles of justice and fairness which prompted the Supreme Court to opt for a heightened level of equal protection scrutiny support the retroactive application of *Reed* and the line of decisions that followed it to the case at bar. Like the parties treated differently under the law in *Orr, Kirchberg,* and *Goldfarb,* Robert Lloyd has suffered an injury, in this case a criminal conviction, which ultimately may have been due to his gender rather than because of any action or inaction on his part. In *Reed* the Supreme Court took the first step toward redressing this kind of injury. Subsequent decisions made additional efforts along these lines by building upon and refining the *Reed* precedent.[7] Applying *Reed* retroactively to Lloyd's conviction would therefore be in accord with the purpose as well as foster the operation of the rule established by *Reed* and its progeny.

In sum, respondent's arguments fail to come even close to justifying the nonretroactivity of *Reed* insofar as Lloyd's habeas corpus petition is concerned. Rather, upon balancing the equities the Court finds that retroactive application of *Reed* to void petitioner's conviction is fully warranted. Accordingly, a separate Order shall be issued granting Lloyd's petition for a writ of habeas corpus.

---

7. *See supra* note 3 and accompanying text.