Melvin SAUNDERS, Plaintiff,

v.

H.K. PORTER CO., INC., et al., Defendants.

and

George N. PRUDEN, Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORP., et al., Defendants.

and

John Howard GRIMES, Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORP., et al., Defendants.

and

In re ALL ASBESTOS CASES.

Civ. A. Nos. 83–223–N, 84–90–NN and 84–362–NN and No. 77–1.

United States District Court,
E.D. Virginia,
Newport News/Norfolk Divisions.

July 31, 1986.

Robert R. Hatten, Donald N. Patten, Patten, Wornom & Watkins, Newport News, Va., for plaintiffs.

Carter A. Anderson, Jr., Anderson & Padrick, Virginia Beach, Va., for Porter Hayden Co.

## AMENDED ORDER

CLARKE, District Judge.

With this Order, the Court VACATES its Order filed July 2, 1986. This matter comes before the Court on the defendants' motions to dismiss and motions for summary judgment in each of these three asbestos personal injury cases. The issues now before the Court involve the latest wrinkles in the legal debate over the applicable statute of limitations in asbestos cases where land-based ship repair workers received injuries allegedly caused by exposure to asbestos products. Because these questions may affect other shipyard worker asbestos cases now pending in the Eastern District of Virginia (collectively referred to as C/P 77–1), the Court requested and received briefs from lead counsel for C/P 77–1 as well as from the parties in the cases now before the Court. In addition, a hearing was held on June 11, 1986. Accordingly, these issues are ripe for disposition.

## PROCEDURAL BACKGROUND

Confusion over the applicable statute of limitations arose because of uncertainty over whether a federal court's admiralty jurisdiction extends to asbestos cases where the plaintiffs are land-based shipyard workers. The issue was first presented to the Court in *White v. Johns-Manville Corp.*, No. 76–178–NN and No. 77–97–NN (E.D.Va.1978). On March 31, 1978 in a pre-trial ruling in *White,* this Court ruled that admiralty jurisdiction did not extend to shipyard worker asbestos cases. When the *White* cases proceeded to trial in November of 1979, the Court applied Virginia law, including the two-year personal injury statute of limitations, § 8.01–243(A) of the Code of Virginia.

In January of 1980, following a judgment n.o.v. for the defendants, the *White* plaintiffs appealed the denial of admiralty jurisdiction. On October 5, 1981, a panel of the United States Court of Appeals for the Fourth Circuit reversed this Court and held that admiralty jurisdiction should have been exercised. *White v. Johns-Manville Corp.*, 662 F.2d 234, 240 (4th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982) ("White II"). As a result, the equitable doctrine of laches applied to determine the timeliness of the action.[1]

The *White II* cases were then remanded to this Court. In pre-trial rulings on May 8, 1982, this Court followed *White II* and held that the cases came within the Court's admiralty jurisdiction. Following jury verdicts handed down in favor of the *White II* plaintiffs in the summer of 1982, defendants appealed, once again contesting the exercise of admiralty jurisdiction in shipyard worker asbestos cases. During the pendency of that appeal, the defendants requested an *en banc* hearing to reconsider *White II.* Although this request was denied in March of 1983, the Fourth Circuit reconsidered its position and on June 6, 1984, *sua sponte* ordered an *en banc* hearing to determine whether *White II* should be overruled. Five days later the Honorable Robert F. Chapman, United States Circuit Judge, stayed all proceedings in cases pending in the Eastern District of Virginia

---

**1.** In 1980, 46 U.S.C. § 763a was enacted, providing in maritime tort cases the cause of action accrues when the plaintiff discovers his injury, and that three-year limitations period applied.

involving "alleged maritime exposure to products containing asbestos" until the Court completed its *en banc* review of *White II*.

The Fourth Circuit's decision to reconsider *White II* was no doubt influenced by the treatment of this question in other circuits. During the period between the Fourth Circuit's issuance of *White II* and its decision to reconsider *White II*, five other Courts of Appeals had rejected the Fourth Circuit's position, ruling that admiralty jurisdiction was inappropriate in land-based shipyard worker asbestos cases.[2]

On June 5, 1985, the Fourth Circuit reversed *White II*, ruling that the state statute of limitations would apply, and thereby bringing the Fourth Circuit in line with the five other Courts of Appeals that had reached this issue. *Oman v. Johns-Manville Corp.*, 764 F.2d 224, 232 (4th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985).[3] Relying on *Oman*, the defendants in the three cases now before the Court filed either motions to dismiss or motions for summary judgment on grounds that the plaintiff's claims are time-barred. Because the parties present matters outside the pleadings on this question, the motions to dismiss will be treated as motions for summary judgment. F.R. Civ.P. 12(b).

### FACTUAL BACKGROUND

The facts in the record relevant to the statute of limitations question may be briefly stated as follows. Plaintiff Melvin Saunders was first diagnosed as having asbestosis on November 6, 1981 and filed his suit against various asbestos manufacturers on December 9, 1983. Plaintiff John Grimes was diagnosed to have asbestosis on February 22, 1982 and filed his claim on May 30, 1984. Plaintiff George Pruden, who was first diagnosed as having asbestosis on June 6, 1982, filed suit less than two years later on May 24, 1984.[4]

Although the question of when Virginia's personal injury statute begins to run is problematic, injury occurs and the statute begins to run *no later than* the date the initial diagnosis of injury is made. *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981); *Large v. Bucyrus-Erie Co.*, 524 F.Supp. 285, 287 (E.D.Va. 1981), *aff'd*, 707 F.2d 94 (4th Cir.1983); *cf.* Va.Code Ann. § 8.01–249, subd. 4 (Supp. 1985) (accrual occurs when the diagnosis is first communicated to the plaintiff, *see* Part II, *infra* ). Thus, if Virginia's two-year personal injury statute of limitations applies, the claims of Grimes and Saunders are time-barred. Pruden's claim, however, is not time-barred for the reasons set forth above.

In an attempt to avoid the claim-preclusive effect the two-year statute of limitations would have on the claims of Grimes and Saunders as well as other C/P 77–1 cases, plaintiffs argue that:

1. The *Oman* decision should not be applied retroactively to bar the claims of injured shipyard asbestos workers who delayed filing their claims in reliance upon the *White II* decision; and

---

**2.** *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119 (9th Cir.1984); *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775 (11th Cir.1984); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir. 1984); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1 (1st Cir.1983); *Keene Corp. v. United States*, 700 F.2d 836 (2d Cir.1983); *Owens-Illinois v. United States District Court*, 698 F.2d 967 (9th Cir.1983).

**3.** Although the case is styled *Oman v. Johns-Manville Corp.*, it is the appeal of this Court's rulings in *White II* on remand.

**4.** Defendants originally claimed that Pruden admitted that his asbestos-related injury existed more than two years prior to the filing of his suit on May 24, 1984. The alleged admission resulted from Pruden's failure to respond to a request for admission that asked him to admit or deny that his injury existed on or before May 29, 1982. The failure to respond to a request for an admission within the prescribed 30-day period conclusively establishes the subject matter of the request for admission. F.R.Civ.P. 36(a). Plaintiff brought to this Court's attention, however, that the admitted fact here is not dispositive because of the five-day gap between May 24, 1982 and May 29, 1982. Accordingly, as defendants concede, the admission alone cannot support a motion for summary judgment on the statute of limitations.

2. Section 8.01–249, subd. 4 of the Virginia Code, which provides that a cause of action for an asbestos-related injury accrues when a diagnosis of an asbestos-related disease is communicated to an individual, should be applied retroactively to asbestos claims pending before the statute's effective date, July 1, 1985.

## I. RETROACTIVE APPLICATION OF OMAN

The Fourth Circuit expressly stated in *Oman* that its decision should be applied retroactively:

> Plaintiffs argue that this decision should be applied prospectively only. *We disagree and apply it retroactively and prospectively.* With this decision we are not changing the law concerning admiralty jurisdiction but are correcting an erroneous application of the nexus requirements. *White II* failed to recognize what type of activities satisfy the maritime nexus test and defendants from the very beginning of this litigation have consistently objected to admiralty jurisdiction. They should not be denied the fruits of their labor in finally convincing a majority of this Court of the merit of their position.

764 F.2d at 232 (emphasis added). Plaintiffs contend, however, that *Oman* should be applied retroactively only to the parties in *Oman*. Plaintiffs argue for selective retroactive application on grounds that the parties in *Oman*, who were also parties in *White II*, could not have relied on the Fourth Circuit's extension of admiralty jurisdiction in *White II.*

■ While retroactive application of judicial decisions is neither compelled nor prohibited by the United States Constitution, *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965), the general rule is that judicial decisions are to be applied retroactively. *Cash v. Califano*, 621 F.2d 626, 628 (4th Cir.1980); *Simpson v. Director, Office of Workers Compensation Programs*, 681 F.2d 81, 84 (1st Cir. 1982), *cert. denied*, 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). The strong presumption in favor of retroactivity cannot easily be overcome. *Simpson*, 681 F.2d at 84; *see Cash*, 621 F.2d at 629 (party opposing retroactivity bears burden of demonstrating that decision should be applied prospectively).

■ Unless otherwise stated, judicial decisions are automatically applied "retroactively" to the parties before the court, and are implicitly applied retroactively to all other potential litigants. *Cash*, 621 F.2d at 628; *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir.1984) (en banc); *see Zemonick v. Consolidated Coal Co.*, 762 F.2d 381, 389–90 (4th Cir.) (Ervin, J., dissenting), *reh'g en banc granted*, 775 F.2d 1175 (1985). Thus, where an appellate court applies its decisions to the parties before it, but is silent as to whether the decision is to be given general retroactive effect, courts generally find further analysis of the retroactivity question to be unnecessary. *Smith*, 747 F.2d at 375; *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). Nevertheless, an appellate court's silence on the issue can create an opportunity for subsequent litigants to successfully raise the retroactivity question. *Zemonick*, 762 F.2d 383–85; *see generally Chevron Oil Co. v. Huson*, 404 U.S. 97, 105–09, 92 S.Ct. 349, 354–56, 30 L.Ed.2d 296 (1971).

■ Here, however, the Fourth Circuit was not silent on the issue, and its clear mandate of retroactive application governs in this case. The Fourth Circuit had, after all, stayed proceedings in all shipyard worker asbestos cases pending the outcome of the Court's reconsideration of *White II*. Under these circumstances, had the Fourth Circuit intended that *Oman* be given only selective retroactive application, it would have clearly stated that intention. It is simply asking too much of this Court to expect it to deny retroactive application of *Oman* to cases stayed pending *Oman* where the Fourth Circuit has decreed that its decision is to be applied retroactively.

The Court is thus compelled under *Oman* to apply Virginia's statute of limitations to the asbestos-related cases now be-

fore it. However, even if this Court were to overlook the Fourth Circuit's explicit handling of the retroactivity issue in *Oman* and apply its own independent consideration of the guidelines on the retroactive application of a statute of limitations laid down by the Supreme Court in *Chevron*, the result would be the same. The Supreme Court described the analytical framework as follows:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principal of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the ruling question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

## A. RELIANCE ON PAST PRECEDENT

To prevail with their *Chevron*-based estoppel argument, the plaintiffs must demonstrate not only that they and other litigants relied on *White II*, but also that their reliance was justified. Here, plaintiffs have established neither. There is nothing in the record other than statements of counsel that would form the factual basis for a reliance argument. While a general decision on retroactivity should not be made on the basis of specific and thus perhaps aberrational facts, the facts of the cases before the Court are valuable to the extent that they "typify general patterns of reliance." *Simpson*, 681 F.2d at 86

(Court concluded that once a *Chevron* analysis is performed on a rule of law, the result—either prospective or retroactive—should apply to all subsequent cases). Moreover, even if the plaintiffs relied on *White II*, that reliance would not have been reasonable or justifiable given the unsettled nature of the law prior to *Oman*.

When judicial decisions are limited to prospective application it is invariably because litigants substantially and justifiably relied on well-established prior law. *See Cash*, 621 F.2d at 629; *National Ass'n of Broadcasters v. Federal Communication Commission*, 554 F.2d 1118, 1132 (D.C.Cir. 1976). For instance, in *Chevron*, the new principle of law "effectively overruled a long line of decision by the Court of Appeals for the Fifth Circuit" on a statute of limitations issue. 404 U.S. at 107, 92 S.Ct. at 355; *see also Zemonick*, 762 F.2d at 385 (settled rule had been unquestioned for over ten years). Under the circumstances present in *Chevron* and *Zemonick*, the plaintiffs reasonably relied on longstanding prior law. *Chevron*, 404 U.S. at 107, 92 S.Ct. at 355; *Zemonick*, 762 F.2d at 386.

Reliance on *White II*, on the other hand, was much less justifiable. *White II*, a case of first impression on which final judgment had not then been entered, was the only precedent supporting the application of maritime law to cases involving injuries to land-based ship repair workers. In comparison with the prior law, *White II* was an aberration. The Fourth Circuit later characterized the *White II* extension of admiralty jurisdiction as "an erroneous application of the nexus requirements [set forth in *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) and *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) ]." *Oman*, 764 F.2d at 232.

Further, in early 1983, three United States Courts of Appeals held that admiralty law should not be applied in shipyard worker asbestos cases, and in so doing, each specifically declined to follow the holding in *White II*. *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 9 (1st Cir.1983); *Keene Corp. v. United States*, 700 F.2d

836, 844 (2d Cir.1983); *Owens-Illinois v. United States District Court,* 698 F.2d 967, 971 (9th Cir.1983).[5] These three decisions were issued nine to eleven months before the claim of plaintiff Grimes was barred by the running of the Virginia statute of limitations (longer periods for Saunders and Pruden), and served as fair warning of the weakness of the *White II* decision.

A reliable indicator of the degree of justifiable reliance on the prior law is the extent to which litigants considered the issue settled prior to the issuance of the decision sought to be applied retroactively. For instance, the Fourth Circuit did not retroactively apply a statute of limitations in *Zemonick* where the defendants in their responsive pleadings had raised no question as to the timeliness of the filing of plaintiff's complaint. 762 F.2d at 385. Here, however, even after *White II* was issued, the defendants consistently challenged the applicability of admiralty jurisdiction in shipyard asbestos cases. *See, e.g.,* June 27, 1984 Answer and Grounds of Defense of Porter Hayden Company to Plaintiff's Complaint at Par. 2; Owens-Corning Fiberglas Corp. Preliminary Statement of Issues filed June 26, 1984 at Par. 23. Since the same group of counsel ends up opposing each other in most of these shipyard worker asbestos cases, plaintiffs' counsel were well aware of the defendants' persistence on the statute of limitations issue.

In fact, *Oman* involved the same facts, essentially the same counsel, and the four remaining plaintiffs from *White II.* The circuitous voyage of the four *Oman* plaintiffs through the federal court system highlights the unsettled nature of the legal issues addressed in *White II.* The case was not finally terminated until the United States Supreme Court denied certiorari on *Oman* in November of 1985, almost ten years after their claims were filed.

The defendants' persistence, combined with the unsettled procedural posture of *Oman* and the signals sent by the other

circuits' rejection of the *White II* analysis, should have placed plaintiffs on notice as to the vulnerability of their position. At best, then, the theory that admiralty jurisdiction existed in these shipyard worker cases was in its "embryonic stages," *see Bronze Shields, Inc. v. New Jersey Dept. of Civil Service,* 667 F.2d 1074, 1085 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982), and was thus too uncertain to be reasonably relied upon by plaintiffs.

## B. THE PURPOSE OF THE OMAN RULING

The second factor in the *Chevron* analysis, whether retroactive application of *Oman* will "further or retard its operation," *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355, also counsels in favor of retroactivity. To limit *Oman* to prospective application would rob it of much of its significance given that the Fourth Circuit stayed a large number of asbestos suits (including these plaintiffs' suits) pending its decision in *Oman.*

In addition, the primary rationale for the Court's restriction of admiralty jurisdiction in *Oman* would be undercut if the decision applied prospectively only. The *Oman* court premised its decision on federalism-based concerns over admiralty law's preemption of "state regulation of matters traditionally within the ambit of local control," 764 F.2d at 227. Tort law in general, including the statutes of limitation applicable in tort cases, is an area of traditional state regulation. An indication of state interest in the substantive rights associated with statutes of limitation is § 8.01–234 of the Code of Virginia, which provides that an action barred by a statute of limitations is not revived by repeal of that limitation provision. *See also* Part II *infra.* Moreover, the Fourth Circuit directly addressed plaintiff's complaints over the potential harshness of Virginia's statute of limitations, stating:

Plaintiffs are understandably concerned about the problems they face with the

---

**5.** Courts of Appeals for the Fifth and Eleventh Circuits rejected the *White II* holding in 1984.

*See supra* n. 2.

Virginia statute of limitations. The potential injustice to these plaintiffs from the application of a short statute of limitations does not mandate this Court to assert its admiralty jurisdiction. "By granting the federal court's jurisdiction over maritime disputes, the constitution does not license them to repair injustice wherever they may perceive it. The purpose of admiralty jurisdiction is not to permit the federal courts to recognize the causes of action for claims they believe meritorious whenever state law precludes such claims." ... Virginia's statute of limitation is a matter of state concern, governed by state law, which we may not interfere with in this case. 764 F.2d at 232 (citation omitted). The *Oman* court's concern over preemption of Virginia's statute of limitations applies with equal force to plaintiffs' cases as it does to the parties in *Oman*.

Finally, the "federal interest in uniformity of the law governing maritime matters...." 764 F.2d at 232, would be undercut if *Oman* is only applied prospectively. Following the *Oman* court's reversal of *White II*, the six Courts of Appeals that have reached the issue are in agreement as to the inapplicability of admiralty law in shipyard worker asbestos cases. Yet if *Oman* is not applied retroactively, the maritime tort statute of limitations, 46 U.S.C. § 763a, would apply to a sizable group of shipyard worker asbestos plaintiffs but only within the Fourth Circuit. The Court, therefore, concludes the purposes underlying *Oman* support applying the decision retroactively.

### C. THE EQUITIES OF RETROACTIVE APPLICATION

Certainly, the application of Virginia's short statute of limitations in asbestos-related cases involves some "potential injustice." *Oman*, 764 F.2d at 232. This potential injustice, however, is not limited to plaintiffs who filed their claims after *White II* was decided. The plaintiffs in *Oman* relied on *White II* to the extent they expended money and effort in bringing their claims to trial on remand after *White II*. Nevertheless, the Fourth Circuit chose to apply its decision retroactively to the *Oman* plaintiffs. While the parties now before the Court arguably relied on *White II* to a larger degree than the parties in *Oman*, this reliance was unjustified given the unsettled, developing nature of the law concerning admiralty jurisdiction in shipyard asbestos cases. Also, the Court must not ignore the inequities that would be suffered by the defendants if *Oman* were not applied retroactively. The defendants, both here and in *Oman*, have "consistently objected to admiralty jurisdiction ... [and] should not be denied the fruits of their labor in convincing a majority of [the Fourth Circuit] of the merit of their position." *Oman*, 764 F.2d at 232.

In short, plaintiffs have not overcome the recognized presumption in favor of retroactivity. *Simpson*, 681 F.2d at 84; *Rogers v. Lockheed-Georgia Co.*, 720 F.2d 1247, 1249 (11th Cir.1983) (all three *Chevron* factors must be met by party opposing retroactive application). Accordingly, the Court HOLDS that the *Oman* decision should be retroactively applied.

### II. RETROACTIVE APPLICATION OF § 8.01–249.4 OF THE VIRGINIA CODE

■ Plaintiffs contend that § 8.01–249, subd. 4 of the Virginia Code should be applied retroactively to asbestos-related personal injury claims pending before the statute's effective date, July 1, 1985. Section 8.01–249 provide in pertinent part:

The cause of action in the actions herein listed shall be deemed to accrue as follows:

\* \* \* \* \* \*

4. In actions for injury to the person resulting from exposure to asbestos or products containing asbestos, when a diagnosis of asbestosis, interstitial fibrosis, mesothelioma or other disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician. However, no such action may be brought more than two years after the death of such person.

Va.Code Ann. § 8.01–249 (Supp.1985).

Plaintiffs' argument that § 8.01–249 should be applied retroactively was rejected by the Western District of Virginia in

*Palmer v. Norfolk & Western Railway Co.*, 646 F.Supp. 610, 612 (W.D.Va.1985) (Kiser, J.). For the reasons that follow, the Court agrees with Judge Kiser and applies the statute prospectively only.

In contrast to rules established in judicial decisions, statutes generally are applied prospectively, absent a clear and unequivocal expression by the legislature to the contrary. *Estate of Armentrout v. International Harvester*, 547 F.Supp. 136, 137 (W.D.Va.1982); 73 Am.Jur.2d *Statutes* § 350 (1974). In Virginia, where the statute involved is a statute of limitation, the general rule applies:

> There appears to be no good reason for excluding statutes of limitations, or remedial statutes, from the general rule, that retroactive or retrospective legislation is not favored, in the absence of any words expressing a contrary intention. Undoubtedly, the Legislature may declare a statute dealing with remedial legislation, or one not affecting vested rights, to have a retroactive operation. It is reasonable to conclude that the failure to express an intention to make a statute retroactive evidences a lack of such intention.

*Ferguson v. Ferguson*, 169 Va. 77, 86–87, 192 S.E. 774, 777 (1937); *Phipps v. Sutherland*, 201 Va. 448, 452, 111 S.E.2d 422, 425 (1959).

Moreover, Virginia's policy favoring prospective application of statutes of limitations is codified both in § 8.01–234 and § 8.01–256 of the Code of Virginia. Section 8.01–234 provides that an action barred by a statute of limitations is not revived by repeal of that limitation provision. Section 8.01–256 provides that the 1977 amendments to the limitation provisions are inapplicable to any cause of action that accrued prior to the effective date of those amendments.

Plaintiffs contend, however, that § 8.01–249, subd. 4 does not fit within the rule of *Ferguson* and is outside the scope of § 8.01–234 and 8.01–256 because it is merely procedural. There is some support in Virginia case law for the proposition that

the rule of *Ferguson* is "somewhat relaxed" where the statute only affects questions of procedure. *Duffy v. Hartsock*, 187 Va. 406, 417, 46 S.E.2d 570, 575 (1948). Plaintiffs assert that because § 8.01–249 does not change the *period* of time provided to a plaintiff for filing an action, and therefore does not affect substantive or vested rights, it should be considered a procedural provision. The Court disagrees. The accrual provision incorporated into a statute of limitations is as much a part of a statute of limitations as the time allotted for filing a claim after a claim has accrued. Since, as stated above, statutes of limitation and amendments to statutes of limitations are given prospective effect absent the legislature's indication of intention to do otherwise, provisions directly affecting statutes of limitation should be given equivalent treatment.

However, even if a statutory amendment affecting accrual under a statute of limitations, such as § 8.01–249, were to be considered a procedural or remedial matter, the Court would not give it retroactive effect absent *some* indication that the legislature intended it to be so applied. *Estate of Armentrout*, 547 F.Supp. at 138 n. 6; *see Forbes v. Kenley*, 227 Va. 55, 59–60, 314 S.E.2d 49, 51–52 (1984). Here, no such intent is present from the language of the statute or its legislative history. *Palmer*, at —, slip op. at 3. To the contrary, the opposite inference can be drawn from the language of § 8.01–250.1 of the Virginia Code which was enacted during the same legislative session as § 8.01–249, subd. 4. Section 8.01–250.1 provides for the recovery of costs of removing asbestos material from certain buildings and expressly provided for the retroactive revival of time-barred actions for the recovery of such costs. Thus, it is safe to conclude that had the legislature intended § 8.01–249 to apply retroactively, they would have incorporated similar language into the statute. Under these circumstances, § 8.01–249 simply cannot be applied retroactively.

## CONCLUSION

The Court, therefore, HOLDS that Virginia's two-year personal injury statute of

limitations, Va.Code Ann. § 8.01–243(A), applies retroactively to cases filed prior to the Fourth Circuit's ruling in *Oman,* and that § 8.01–249 of the Virginia Code only applies to cases filed after its effective date, July 1, 1985. Accordingly, the claims of plaintiffs Grimes and Saunders are barred by the statute of limitations as a matter of law and the defendants are GRANTED summary judgment. For the reasons stated, Civil Action Nos. 83–223–N and 84–362–NN are DISMISSED with prejudice. The motions for summary judgment in Pruden's case are DENIED, the defendants having failed to establish that he was injured more than two years prior to the filing of his claim.

IT IS SO ORDERED.